Clifford APPLEGATE *v.* Kimberly APPLEGATE

CA 07–657                                    275 S.W.3d 682

Court of Appeals of Arkansas
Opinion delivered February 13, 2008

*Woodworth Law Firm, PLC,* by: *Linda Woodworth,* for appellant.

*James E. Goldie,* for appellee.

Larry D. Vaught, Judge. Appellant Clifford Applegate was found to be in "contempt" of court and ordered to pay a $500 attorney's fee to his former wife, appellee Kimberly Applegate, who filed the initial contempt petition. On appeal, Clifford argues that the trial court erroneously held him in criminal contempt. His wife responds that the trial court properly held him in civil contempt. Because there was neither a valid criminal-contempt finding nor a valid civil-contempt finding, we reverse the fee award and the trial court's "contempt" designation.

The facts of this case are not in dispute. Following a contested divorce between the Applegates, a decree of divorce was filed on October 20, 2006. In the decree the trial court ordered Clifford to pay certain judgments and marital bills, but the court did not set a time or date in its decree by which these debts had to be satisfied. Despite the indefinite terms of the decree, on December 5, 2006, Kimberly filed a verified petition for contempt alleging that Clifford had willfully disobeyed the decree. Clifford was ordered to appear before the trial court on February 28, 2007, and show cause why he should not be held in contempt and punished for willful disobedience of a court order.

At the February hearing, the trial court rejected Kimberly's assertion that Clifford had failed to pay her thousands of dollars owed. The trial court recognized that Kimberly had valid judgments against Clifford for the large majority of the amount due her and that she had rested on her rights of execution in relation to the judgments. Specifically, the trial court noted that the judgments previously entered in Kimberly's favor had vested her with the right to compel payment and that she could have filed an order of garnishment to ensure that she would receive payment.

The evidence also showed that Clifford had satisfied many of the debts he had been ordered to pay and, despite changing jobs and taking a pay cut, he continued to make payments toward his obligations each month. However, the trial court was troubled by the fact that Clifford had failed to pay anything whatsoever on at least two of the marital debts outlined in the decree — the $199 debt owed to Western Grove Deli and the $780 debt owed to Mountain Crest Rehabilitation. During the trial court's examination of Clifford, this exchange took place:

> THE COURT: Have you paid anything to the Western Grove Deli?
>
> MR. APPLEGATE: No, I haven't.

THE COURT:  North Arkansas Medical Regional Medical Center?

MR. APPLEGATE:  Yes, I think I paid that off.

THE COURT:  $88.85 you've paid that?

MR. APPLEGATE:  Yes. Yes, I did.

COURT:  Dr. Patterson?

MR. APPLEGATE:  I don't know if I've paid Dr. Patterson or not?

THE COURT:  Dr. Keener, how much did you pay on that?

MR. APPLEGATE:  I paid $30.00 on that so far on the checks that I've found.

THE COURT:  What about Mountain Crest Rehab?

APPELLANT:  I've not paid anything on that yet.

THE COURT:  Not to the extent that [Kimberly] alleged, [she] could have garnished wages but the Court did order that [Clifford] pay certain bills[,] which he has not, therefore, he is in Contempt of Court. The Court holds him in Contempt and orders payment of a $500.00 attorney's feel [sic]. That is the ruling of the order of the Court. Comply with the orders of the Court and get this behind you.

In response to this ruling, Clifford's counsel argued that there could not be a contempt finding without a corresponding finding that his client had "willfully disobey[ed] the Court orders." The following colloquy took place:

THE COURT:  Look. Just hold on a second. Look. They claimed he's thousands [sic] dollars behind. I intentionally didn't order him to pay those thousands of dollars because I knew he probably [could] not do that, you know. I gave him judgments and if they want to garnishing wages, that would put him in a position

where reasonable people would try to work out an agreement. He's not a bad person but he's in contempt of court.

Ms. WOODWORTH
[COUNSEL FOR APPELLANT]: Your Honor, I still disagree. I don't see how he could be in contempt of court if he's making payments every month when he gets his paycheck. He's taking out a little bit for groceries and a little bit for his rent and everything else is going to his obligations. If he had nothing left and he can't borrow money, what else would [you] ask him to do?

THE COURT: I tell you what. You've got 30 days to file an appeal. If you think I'm wrong, file an appeal. It's been done before. Sometimes the Court of Appeals tells me I'm wrong.

As the trial judge suggested, Clifford filed a timely appeal and now argues that the trial court erred in its finding that he committed contempt because he did not willfully disobey a definite order of the court. He also asserts that, because he was ordered to pay a fee, he was held in de facto criminal contempt and was denied certain Due Process rights that attach with a finding of criminal contempt. In response, Kimberly first alleges that Clifford has confused criminal contempt with civil contempt. She then concludes that the trial court properly found Clifford in civil contempt because he failed to pay certain debts set out in the divorce decree.

We begin by setting out the two contempt standards. Contempt is divided into criminal contempt and civil contempt. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Appellate courts have often noted that the line between civil and criminal contempt may blur at times. *Id.* However, we have given a concise description of the difference between civil and criminal contempt. *See Baggett v. State*, 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985) (noting that criminal contempt *punishes* while civil contempt *coerces*) (emphasis in original).

Thus, in determining whether a particular action by a trial court constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988). Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *Id.* This is the source of the familiar refrain that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 140, 752 S.W.2d at 277 (quoting *Penfield Co. v. S.E.C.*, 330 U.S. 585, 593 (1947), which quoted *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)). Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged. *Fitzhugh*, 296 Ark. at 139, 752 S.W.2d at 276-77.

In *Feiock v. Feiock*, 485 U.S. 624 (1988), which was adopted by our supreme court in *Fitzhugh*, the Supreme Court explained the contempt distinctions this way:

> [T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, and is punitive if the sentence is limited to imprisonment for a definite period. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt.

485 U.S. at 631-32 (internal quotations and citations omitted).

Based on this language, our supreme court has set a bright-line rule that aids our resolution of the first question before us — whether the $500 attorney fee was in essence a "punitive fine" for

criminal contempt. A contempt fine for willful disobedience that is payable to the complainant is remedial, and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt. *See Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 454, 156 S.W.3d 228, 238 (2004) ("Here, the fine is to be paid to the complainant, and we conclude that it is for civil contempt."); *Fitzhugh, supra.*

■ Therefore, we know (based on the fact that Clifford was ordered to pay Kimberly, not the court), if there was any contempt at all, it was civil contempt. So we now review the trial court's finding of civil contempt. Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). In order to establish civil contempt, there must be willful disobedience of a valid order of a court. *See Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Id.*

■ In this case there are two distinct problems with the trial court's finding of contempt. First, there is no valid civil-contempt finding. As discussed earlier, it is the remedy that distinguishes the type of contempt, and here the court failed to grant any remedy whatsoever. In order for the trial court to have found Clifford in civil contempt, the court must have empowered him with a path to purge the contempt. Clifford was not in civil contempt because the sentence was not contingent on certain terms being satisfied — in other words, he was not "handed the keys to the jailhouse door." However, he also was not in criminal contempt because he was not required to pay a fine to the court, or ordered to jail for a set period of time. In sum, the record demonstrates neither civil contempt nor criminal contempt.

■ Additionally, there is no factual basis for contempt. The decree did not set out a time frame or definitive terms by which Clifford was required to satisfy all debts assigned to him, and (presumably due to this lack of specificity) the trial court made no finding that Clifford had willfully disobeyed a court order. Therefore, we must conclude that a finding of contempt is clearly against

the preponderance of the evidence. As such, we reverse the trial court's order of contempt and the award of attorney's fees associated with it.

Reversed.

GRIFFEN and BAKER, JJ., agree.