

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–552

| | |
|---|---|
| KIMBERLY L. FOWLER<br><br>APPELLANT<br><br>V.<br><br>KENNETH R. HENDRIX<br><br>APPELLEE | **Opinion Delivered** January 6, 2016<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. DR–2006-186]<br><br>HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Kimberly L. Fowler appeals from an April 7, 2015 order by the Craighead County Circuit Court finding her in contempt and granting judgment in favor of appellee Kenneth R. Hendrix. On appeal, Fowler contends (1) that the circuit court erred in finding her in contempt and responsible for child support after her visitation terminated in October 2010 and (2) that the circuit court erred in not applying the doctrine of equitable estoppel. We affirm.

Fowler and Hendrix were married on September 1, 1990. They have two children, a son, K.H., born on November 19, 1991, and a daughter, K.L.H., born on December 31, 1996. Hendrix filed a complaint for divorce on February 24, 2006, and a divorce decree was filed on March 27, 2006. The parties entered into a written settlement agreement dated February 24, 2006, and an amended agreement dated March 27, 2006. The agreements were

confirmed and incorporated into the divorce decree.  In relevant part, the settlement agreements stated that the parties were to share joint custody of the children, with Hendrix acting as the primary custodial parent, and that "no child support [was] to be paid by either party."  The second paragraph of the agreements provided that Hendrix would continue to pay for the children's health insurance and that certain expenses, such as medical bills not covered by insurance, prescription drugs not covered by insurance, and extracurricular activities as mutually agreed upon by the parties, would be shared equally by Hendrix and Fowler.

Subsequent to the divorce decree, there was extensive litigation relating to child custody and visitation, most of which is not relevant to this appeal.  However, on September 10, 2007, the circuit court entered an agreed order finding that

> it would be in the best interest of the parties and the children that any regularly scheduled visitation be held in abeyance until further orders of this court.  The parties acknowledge that when the children, or either child individually, are ready to visit with the defendant on a regular basis, this court has the power and authority to reinstate appropriate visitation.
>
> . . . .
>
> Any requirement of support by the defendant as set forth in paragraph 2 of the stipulation and property settlement agreement dated February 23, 2006, is terminated. In the event regular visitation is re-established with the defendant, then defendant will resume the requirement of support as set forth in paragraph 2 of the stipulation and property settlement agreement dated February 23, 2006.

After additional litigation not relevant to this appeal, the circuit court made the following findings in an agreed temporary order filed on April 5, 2010:

> 3.  On November 10, 2009, the Court entered its Order granting defendant specified visitation and placing restrictions on contact between defendant's husband

2

SLIP OPINION

and the minor child. The parties were ordered into mandatory counseling with the minor child[, K.L.H.].

       4. In light of the progress during counseling sessions, the Court doth find that it is in the minor child's best interests for the trial scheduled for June 28, 2010, to be removed from the Court's docket.

       5. Defendant shall receive daytime visitation with the minor child from 3:30 p.m. to 8:00 p.m. on each Tuesday and Thursday, with visitation to be increased on the recommendation of the counselor.

       6. Any lifting of the restrictions of contact between the minor child and Chris Fowler shall be implemented only after the written recommendation of the child's counselor.

       7. The defendant is ordered to pay the plaintiff for the support and maintenance of the child the sum of $500.00 each and every month commencing April 1, 2010, and thereafter on the first day of each month, and continuing until said child reaches the age of 18 years or graduates from high school, whichever occurs last. . . .

       8. Either party may request that this matter be reset for final trial.

       9. All prior orders shall remain in full force and effect unless specifically modified herein.

On January 6, 2015, Hendrix filed a petition for contempt, alleging that Fowler had willfully failed to pay the child support ordered by the circuit court in the April 5, 2010 order. He requested the circuit court to award him a judgment in the amount of the child-support arrearage in addition to attorney's fees and costs. Fowler filed a response generally denying the allegations and affirmatively pleading the defenses of laches, unclean hands, and estoppel. A hearing was held on February 24, 2015.

At the hearing, Hendrix testified that he had had full custody of the children since September 10, 2007. At the time of the hearing, both children were over the age of eighteen, and the younger child was a senior in high school. He further explained that Fowler had agreed to pay monthly child support as reflected in the April 5, 2010 order, and she had made monthly payments from April to October 2010. He denied on cross-examination that his purpose throughout the litigation was to frustrate Fowler's visitation with her children and

denied that he tried to convince the children to not visit their mother. He further denied that he had waited to file the petition for contempt until after the children had turned eighteen because he did not want Fowler to reestablish visitation or because he thought that the support obligation was contingent upon Fowler's visitation.

Although she had funds to pay the child support, Fowler ceased to make any child-support payments after October 2010 because she had voluntarily stopped her visitation with her daughter. She testified that she agreed to stop her visitation during one of her counseling sessions with her daughter after a discussion at that time with both her daughter and the counselor. She further testified that she agreed to continue visitation with her daughter but only "at her [daughter's] will." She contended that she had not willfully violated the circuit court's order because she thought that the previous 2007 order was still applicable and that if she was not receiving regular visitation, then she was not responsible for any support.

Fowler's counsel orally argued that, although the 2010 order set the child support at $500 per month, it did not modify the provision of the 2007 order that child support would stop if visitation stopped. Alternatively, Fowler's counsel argued that Hendrix should be estopped from collecting the child-support arrearage based on his conduct. Counsel further argued that Hendrix was aware of the circuit court's previous orders, that he frustrated Fowler's visitation with the children, and that he did not try to collect the child-support arrearage until after the children had turned eighteen.

At the conclusion of the hearing, the circuit court orally pronounced that it found Fowler in contempt, and although the circuit court did not sanction her, it awarded a

judgment in Hendrix's favor. It specifically found that the April 5, 2010 agreed order controlled and that it required Fowler to pay child support. Additionally, the circuit court noted that the 2010 order allowed either party to request that the matter be reset for a final hearing and that Fowler did not schedule a final hearing, even though she had felt that her visitation impacted whether the ordered child support should continue.

After the hearing, the circuit court filed a written order on April 7, 2015. The circuit court specifically found that Fowler was in contempt and that she had failed to pay the child support ordered in the April 5, 2010 order, which resulted in a $26,000 arrearage. Additionally, the circuit court found that Fowler had failed to prove any equitable defenses at trial. Therefore, the circuit court awarded Hendrix a judgment of $27,741.25, including the child-support arrearage, attorney's fees, and costs. This timely appeal followed.

Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Omni Holding and Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). In order to establish civil contempt, there must be willful disobedience of a valid order of a court. *Applegate v. Applegate*, 101 Ark. App. 289, 275 S.W.3d 682 (2008). However, before one can be held in contempt for violating the circuit court's order, the order must be definite in its terms and clear as to what duties it imposes. *Id.*

Additionally, we have stated that we review child-support cases de novo on the record. *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245. Moreover, we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Id.* In reviewing a circuit court's

findings, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.  *Id.*  However, we give no deference to a circuit court's conclusion of law.  *Id.*[1]

Fowler first contends that the circuit court erred in finding her in contempt and responsible for child support after her visitation terminated in October 2010.  Specifically, Fowler argues that the September 10, 2007 order "made child support contingent on visitation" and that, although the April 5, 2010 order "reinstated" visitation and child support, the order did not "specifically modify the [c]ircuit [c]ourt's prior ruling that child support was contingent on visitation.  Therefore, that provision of the 2007 Order—which made child support contingent on visitation—remained in full force and effect."  We disagree.

The September 10, 2007 order held Fowler's visitation in abeyance and terminated any support as set forth in paragraph two of the stipulated property-settlement agreement dated February 23, 2006.  Paragraph two of the agreement, as outlined above, addressed health insurance and certain other shared expenses, such as medical, prescription, and extracurricular expenses—not a specific monthly child support.  Despite Fowler's argument to the contrary, the April 5, 2010 order clearly modified the court's previous order and established monthly child support that was not contingent on Fowler's visitation with the children.  As such, the circuit court did not err in finding her in contempt and responsible for the child-support

---

[1] We acknowledge that the parties disagreed as to this court's standard of review. Fowler argued that this court should also review the circuit court's contempt finding de novo on the record because this case also involved issues regarding child support.  However, we note that, regardless of whether there is any merit to this argument, the result is the same under the particular facts of this case.

arrearage.

Fowler alternatively contends that the circuit court erred in not applying the doctrine of equitable estoppel. This court has previously affirmed the use of equitable defenses to prevent the enforcement of child-support orders, including an arrearage. *State Office of Child Support Enf't v. Burger*, 80 Ark. App. 119, 92 S.W.3d 64 (2002). The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that its conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other party's conduct to its detriment. *Id.*

Fowler specifically argues that she is entitled to rely on equitable estoppel because "(1) Mr. Hendrix failed to demand child support for four years and intended for Ms. Fowler to rely on his silence to her detriment; and (2) Mr. Hendrix has continually acted to defeat Ms. Fowler's visitation rights and to alienate the affections of the children." However, "the mere fact one delays pursuing rights to obtain a judgment on past due support does not prevent one from seeking a judgment." *Benn v. Benn*, 57 Ark. App. 190, 192, 944 S.W.2d 555, 556 (1997); *see also Cunningham v. Cunningham*, 297 Ark. 377, 761 S.W.2d 941 (1988). Additionally, Fowler openly admitted that she voluntarily agreed to stop her visitation with her daughter without Hendrix's involvement, and she did not pursue any further court intervention prior to the contempt proceedings despite the circuit court's explicit invitation to do so. Furthermore, Hendrix denied that his purpose throughout the litigation was to

SLIP OPINION

frustrate Fowler's visitation with her children or that he tried to convince the children to not visit their mother. He further denied that he waited to file the petition for contempt until after the children had turned eighteen because he did not want Fowler to reestablish visitation or because he thought that the support obligation was contingent upon Fowler's visitation. As we noted previously, we defer to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Chitwood*, *supra*. As such, we cannot say that the circuit court erred in finding that Fowler failed to prove that Hendrix should be estopped from collecting the child-support arrearage.

Affirmed.

HARRISON and KINARD, JJ., agree.

*Snellgrove, Langley, Culpepper, Williams & Mullally*, by: *Matt Modelevsky* and *J. Chad Owens*, for apellant.

*Owens, Mixon & Gramlin, P.A.*, by: *H. Clarke Mixon* and *James F. Gramlin, Jr.*, for appellee.