# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-798

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE | Opinion Delivered: March 15, 2017 |
| | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CV-10-757] |
| APPELLANT | |
| V. | HONORABLE VICTOR L. HILL, JUDGE |
| HUBERT BASS, MEMBER AND CHAIRMAN OF THE ELECTION SUPERVISORY COMMITTEE OF THE CRITTENDEN COUNTY BRANCH OF THE NAACP | AFFIRMED |
| APPELLEE | |

## RAYMOND R. ABRAMSON, Judge

This case stems from a lengthy and contentious dispute between appellant, the National Association for the Advancement of Colored People ("NAACP"), and the Crittenden County Branch of the NAACP ("the Branch"), represented by appellee, Hubert Bass. In 2010, Mr. Bass filed suit in the Crittenden County Circuit Court to resolve a controversy over the election of Branch officers. The NAACP intervened and was ultimately held in contempt for failing to obey court orders. As sanctions, the circuit court directed the NAACP to pay the Branch $100,000, plus $20,000 in attorney's fees, and imposed a three-year "pre-clearance" period, during which the NAACP could take no



action regarding the Branch without the court's permission. The NAACP appeals the contempt order. We affirm.

## I. *Background*

On November 15, 2010, the Branch held an election to choose its local officers. Prior to the election, the incumbent president, Willa Catha-Jones, advised the NAACP's national office that a group of people were trying to "seize" the Branch. Fearing a disruption in the election process, the national office urged NAACP Arkansas State Conference President Dale Charles to oversee the election. Mr. Charles traveled to West Memphis for that purpose but was prevented from monitoring the election by Mr. Bass and others on the Branch's election committee. The election proceeded, and all incumbent officers were defeated, including Willa Catha-Jones.

Despite the election results, Ms. Catha-Jones refused to relinquish her presidency. The national NAACP apparently supported her stance in a December 2010 letter, which stated that the election was void. This led Mr. Bass to file suit to validate the election results and enjoin any interference with the new officers' installation. Mr. Bass listed Ms. Catha-Jones and the Branch as defendants but did not name the national NAACP as a party.

After a hearing, the circuit court issued a temporary injunction on February 17, 2011, confirming the election results and stating that "the unilateral claim of a third party that the election is void does not qualify to void the election." The court then listed the roster of newly elected officers, including the new Branch president, Mr. Shabaka Afrika.[1]

---

[1]The court also ordered outgoing president Catha-Jones to turn over the Branch's office key, meeting minutes, checkbook, and other items. Ms. Catha-Jones did not comply

On March 9, 2011, the NAACP's national office sent a letter to Mr. Afrika stating that the election was "suspended"; that new elections had been scheduled; and that the Branch's former officers would "continue to serve." The court learned of the letter and entered an order on March 31, 2011, stating that persons "outside Crittenden County" were attempting to overturn the court's rulings in concert with Ms. Catha-Jones. The court warned that those in league with Ms. Catha-Jones acted at their own peril and invited the NAACP to come before the court to explain its actions.

The following day, April 1, 2011, the NAACP filed a motion to intervene in the case. The motion was granted on April 12, 2011. In the interim the NAACP sent a letter to Mr. Afrika on April 8, 2011, suspending his membership and accusing him of misrepresenting himself as president of the Branch.

Months later, on October 13, 2011, the court entered an order strongly suggesting that the NAACP resolve the case by recognizing the legitimacy of the 2010 election and granting the Branch all rights and privileges enjoyed by a branch in good standing. The court's suggestion apparently fell on deaf ears because, on October 26, 2011, the NAACP's chief operating officer, Roger Vann, distributed a letter declaring that the national board of directors had voted to suspend the Branch's charter; that the Branch had "no officers"; and that the Branch was "not in good standing." The letter bore the salutation, "Dear NAACP Member" and was purportedly sent to the Branch membership. The letter was also copied to various state and national NAACP officials.

---

and was held in contempt on several occasions. Her contempt citations are not at issue in this appeal.

In response to the letter, Mr. Bass filed a motion for an ex parte injunction to prevent the suspension of the Branch's charter and Mr. Afrika's membership. The court granted the motion in a November 4, 2011 order. The order recited that the NAACP's October 26, 2011 letter was in "direct and flagrant contravention of the court's previous orders" and constituted "an act of contempt" for which sanctions would be considered. The court additionally stated:

To make it clear, just in case further clarification is required:

Neither the intervenor [the NAACP], its officers, agents, attorneys, or employees, or anyone else acting on their behalf or in concert with them has any authority to make any determinations regarding the Crittenden County Branch of the NAACP, its status, the status or legitimacy of any of its members or officers, or any other matter until this court, or a court with appellate authority over this court, says otherwise.

The NAACP filed a motion to vacate the order, which the court denied on December 22, 2011.[2]

Approximately eighteen months later, at an August 29, 2013 hearing, Mr. Bass's counsel asked the NAACP to issue a letter reinstating the Branch and its membership. Counsel argued that the NAACP had continued to deny the Branch's legitimacy, citing as proof the letters suspending the Branch's charter and Mr. Afrika's membership as well as a 2012 incident in which Branch members were not allowed to vote at the state convention. The NAACP declined to write a letter but stipulated in court that the Branch and Mr. Afrika's membership were "in good standing" and further asked that all parties be required

---

[2]The December 22, 2011 order states that the matter came "before the court" at a December 14, 2011 hearing. The circuit court's docket sheet shows that a hearing was scheduled for that date; however, the record before us contains no transcript of the proceedings.

to abide by the NAACP's constitution and bylaws. The court stated that it would "take the stipulation" and draft a proposed order. That order, which will be discussed in greater detail, would not be entered until October 27, 2014.

In the intervening months, conflict between the NAACP and the Branch persisted. In September 2013, the Branch was denied full participation at the state convention, purportedly because it had failed to file year-end and quarterly reports, as required by NAACP bylaws. Additionally, the NAACP sent letters to the Branch on November 21, 2013, and March 6, 2014, stating that the Branch was "revoked." These letters also requested a greater share of the Branch's membership fees and stated that no future reports would be processed until the matter was resolved.

Mr. Bass again sought help from the court and filed motions on August 28, 2014, for contempt and an ex parte injunction. He also requested monetary compensation and fees as the result of the NAACP's contemptuous conduct.[3] The NAACP responded that the Branch's charter was not revoked and that the letters so stating were sent in error due to a "computer system failure." However, the NAACP insisted that the Branch's inability to participate in the state conventions was due to its own failure to file quarterly and year-end reports in accordance with the bylaws.

Before the above matters could be heard, the court entered an order on October 27, 2014, memorializing the proceedings from the August 2013 hearing, held fourteen months earlier. The court described the order as "final" and stated the following:

> The parties were generally agreed that they should be bound by the Bylaws of the organization, however, it appears that they nevertheless still evince an abiding distrust

---

[3]Mr. Bass had filed a similar motion earlier in the case.

of each other. The court is disinclined to retain jurisdiction of this matter into perpetuity, and questions whether it has the authority to do so in any event. The court reaffirms its earlier order that the contested branch election was properly held and that the officers elected thereby held and hold their offices legitimately. The court further orders that the branch office, its officers, and members be afforded the rights and privileges of all county branches of the NAACP.

On August 7, 2015, the court held a hearing on Mr. Bass's motions for contempt, injunctive relief, and damages. At the hearing, Reverend Gill Ford of the NAACP testified that the Branch was "still chartered" as "an active unit" of the NAACP but was "noncompliant" because it had failed to file the required reports and assessments with the national office. Reverend Ford also said that the letters sent by the national office in November 2013 and March 2014, stating that the Branch was revoked, were the result of a "glitch" in a "new system." Dale Charles, the state NAACP president, testified that there was a difference between a branch being in good standing and being compliant and that the Branch was not compliant because it had failed to meet the requirements of the NAACP bylaws. He said that if the Branch would simply follow the bylaws, it would be able to fully participate in NAACP activities.

Branch President Shabaka Afrika testified that the Branch submitted its 2011 and 2012 assessments to the national office but transmitted nothing thereafter because the November 2013 and March 2014 letters stated that the Branch had been revoked. Mr. Afrika also said that the national office had retained the Branch's money but did not recognize the Branch's membership applications. In fact, he said, the Branch had resorted to issuing its own membership cards. Mr. Afrika further testified that the Branch was damaged by the NAACP's letter of October 26, 2011, which caused memberships to

SLIP OPINION

decrease, donations to dry up, and attendance at the annual fundraiser to decline. Mr. Afrika asked for $100,000 plus attorney's fees to compensate the Branch for the NAACP's conduct.

Rubye Johnson, the Branch's vice president, testified to the problems suffered by the Branch as the result of the October 26, 2011 letter. She said that when she took office in 2010, the Branch had 287 members but now had fewer than sixty. Other Branch members testified that, in recent conversations with Dale Charles, he stated that the Branch was not in good standing.

On September 2, 2015, the circuit court entered the order that is now on appeal. The court ruled that the NAACP's "utter disdain" for court orders and its failure to acknowledge the Branch constituted "persistent, deliberate, flagrant and willful contempt." As sanctions, the court ordered the NAACP to pay the Branch $100,000 plus $20,000 in attorney's fees, and to submit to a three-year preclearance period, during which it would take no action regarding the Branch without prior court permission. The court also ordered the NAACP to extend to the Branch every courtesy and amenity that was available to a branch in good standing and compliance; to assist the Branch in addressing any deficiencies in reporting; and to take no punitive actions against the Branch or restrict its participation in the organization's functions and activities. The NAACP filed a timely notice of appeal from the contempt order.

## II. *Contempt*

Our law divides contempt into two categories: civil and criminal. *Balcom v. Crain*, 2016 Ark. App. 313, 496 S.W.3d 405. Civil contempt may be compensatory in nature and may impose damages for the injuries that a party suffers when the opposing party disobeys

a court order. *See Ransom v. JMC Leasing Specs., LLC*, 2016 Ark. App. 509, 505 S.W.3d 737. The circuit court's contempt ruling in this case compensated the Branch for the NAACP's noncompliance with court orders. The contempt ruling was therefore civil in nature.

To establish civil contempt, there must be willful disobedience of a valid court order. *Balcom*, *supra*. The order must be definite in its terms and clear about what duties it imposes. *Riddick v. Harris*, 2016 Ark. App. 426, 501 S.W.3d 859. We will not reverse a finding of civil contempt unless it is clearly against the preponderance of the evidence. *Balcom*, *supra*. A finding of contempt is clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Issues of credibility in a contempt proceeding are for the fact-finder. *Id.*

### III. *Violation of Court Orders*

The NAACP argues that there is no evidence that it violated any court order applicable to it. We review this argument with reference to three of the court's orders: the October 27, 2014 order; the November 4, 2011 order; and the February 17, 2011 order.

### A. The October 27, 2014 Order

At the contempt hearing, Mr. Bass presented evidence that the NAACP had refused to allow the Branch's participation in the 2013 state convention; had issued the November 2013 and March 2014 letters stating that the Branch was revoked; and had issued the October 2011 letter stating that the Branch was suspended and had no officers. These were

the acts that Mr. Bass claimed constituted contempt and for which he sought redress. However, these acts occurred before the October 27, 2014 order was entered.

Contempt is premised on disobedience of a valid judgment, order, or decree of a court having jurisdiction. *See Riddick, supra.* Under Arkansas law, an order is not effective until it is entered. *Allen v. Allen*, 99 Ark. App. 292, 259 S.W.3d 480. It therefore follows that a person cannot be held in contempt of an order that had not yet been entered when the alleged contumacious conduct occurred. *See generally Ex parte Price*, 741 S.W.2d 366 (Tex. 1987). The NAACP is therefore correct that the October 27, 2014 order was applicable to prospective conduct and cannot support a finding of contempt for the conduct that preceded its entry.[4]

### B. The November 4, 2011 Order

The November 4, 2011 order was entered shortly after the NAACP sent the October 26, 2011 letter, which suspended the Branch's charter and stated that the Branch had no officers. The order described the letter as "an act of contempt" and declared that the NAACP had no authority to make "any determinations" regarding the Branch's status without court permission. Clearly, the NAACP's subsequent conduct in 2012, 2013, and 2014, that called the Branch's legitimacy into question, violated the November 4, 2011 order. And, we would not hesitate to uphold the circuit court's contempt ruling on that basis were it not for a procedural peculiarity.

---

[4]The NAACP argues that the circuit court lacked jurisdiction to impose contempt sanctions after the October 27, 2014 order was entered because the court designated the order as a "final" order. However, a trial court retains jurisdiction to enforce its orders, regardless of the nomenclature. *See generally Albarran v. Liberty Health Care Mgmt.*, 2013 Ark. App. 738, 431 S.W.3d 310.

9

The November 4, 2011 order was entered in response to Mr. Bass's motion for an ex parte injunction. As the NAACP correctly points out, our rules of civil procedure provide that a temporary restraining order issued without notice generally expires after fourteen days. Ark. R. Civ. P. 65(b)(2) (2016). The NAACP therefore argues that it cannot be held in contempt of an order that had long ago expired at the time of the conduct in question.

While the NAACP's position is logical on its face, there exists the possibility that the November 4, 2011 order lost its ex parte character, given that the circuit court may have held a hearing on this very matter after the order had been entered. *See supra*, note 2. Nevertheless, because the record is not clear on this point, we will not explore that possibility further but will instead proceed to the next order, which unquestionably supports the circuit court's finding of contempt.

## C. The February 17, 2011 Order

Early in the case, on February 17, 2011, the circuit court entered a temporary injunction following a hearing. The injunction confirmed the Branch's election results. This ruling was echoed in a March 31, 2011 order. However, after these orders had been entered, the NAACP sent a letter on October 26, 2011, stating that the Branch's charter was revoked and that the branch had "no officers." The NAACP also sent the 2013 and 2014 letters stating that the Branch was revoked.

The NAACP argues in part that the 2013 and 2014 letters cannot support a finding of willful contempt because they were sent in error. While there was testimony to that effect, the credibility of that testimony was called into question by the fact that the letters

were sent four months apart without the error having been corrected and by the fact that the NAACP never clarified to the Branch or its membership that the letters had been sent in error. Credibility determinations are the province of the circuit court. *Balcom, supra*.

The NAACP's primary argument, however, is that it could not have been held in contempt of the February 2011 order or any other order that was entered prior to its April 12, 2011 intervention. During oral argument, the NAACP modified its position by acknowledging that it was "subject to" the earlier orders but that the orders were not broad enough to be "directed to" the NAACP.

We disagree at the outset that the early orders in the case were not directed to the NAACP. The February 2011 order stated that "the unilateral claim of a third party that the election is void does not qualify to void the election," a clear reference to the NAACP's December 2010 letter stating that the election was void. The March 2011 order expressly mentioned the state and national NAACP and again referenced the national NAACP's attempts to void the election. It is therefore simply inaccurate to say that the orders were not directed to the NAACP.

More importantly, the circuit court had the authority to hold the NAACP in contempt of its early orders once the NAACP intervened in the case. Intervention is a procedure by which a person, not originally a party to an action, is permitted to and does become a party to the pending proceeding. *Gravett v. McGowan*, 318 Ark. 546, 886 S.W.2d 606 (1994). It has been recognized that an intervenor is treated as though he were an original party and is subject to the court's prior orders. *See Estate of Lomastro v. Am. Family Ins. Grp.*, 195 P.3d 339 (Nev. 2008). We further note, as a general proposition, that even nonparties

may be held in contempt if they have notice of an injunctive order and may not flout a court order with impunity. *See Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Here, the NAACP availed itself of the intervention process and became a party to the case, with all the rights and responsibilities attendant thereto. Having done so, it was bound to obey all court orders, just as any other party.

For these reasons, we affirm the circuit court's finding of contempt and thereby also affirm the imposition of the $100,000 sanction.[5]

### IV. *The Preclearance Period*

As an additional sanction, the circuit court imposed a three-year preclearance period during which the NAACP could take no action regarding the Branch without prior court approval. Citing the *Arkansas Activities Association v. Meyer*, 304 Ark. 718, 805 S.W.2d 58 (1991), the NAACP argues that a court cannot review the actions of a voluntary association absent fraud or other compelling reasons.

Given the lengthy history of this case, the difficulty of managing the parties' interactions, and the NAACP's persistent refusal to obey the court's orders, the circuit court determined that a period of oversight was necessary to resolve this case once and for all. We cannot say that, in this extraordinary situation, the imposition of the preclearance period was beyond the court's authority.

### V. *Due Process*

---

[5]The amount of the sanction was not contested by the NAACP.

The NAACP argues that it was deprived of due process because the circuit court would not grant a continuance to allow it to call an additional witness at the contempt hearing. We see no basis for reversal.

Initially, we observe that the NAACP's extremely brief assignment of error on this point contains no citation to authority or convincing argument. Our appellate courts will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150.

Regardless, we will not reverse the denial of a motion for continuance absent an abuse of discretion amounting to the denial of justice. *Campbell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 146. Here, the NAACP had notice of the hearing and called its witnesses to testify therein. At the close of the hearing, it could not sufficiently articulate why an additional witness was needed. In these circumstances, there was no abuse of discretion.

## VI. *Attorney's Fees*

The circuit court has the inherent power to award attorney's fees in a contempt proceeding. *Scudder v. Ramsey*, 2013 Ark. 115, 426 S.W.3d 427. Because we have affirmed the contempt ruling in this case and do not otherwise see an abuse of discretion in the fee award, it is affirmed.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Wright, Lindsey & Jennings, LLP*, by: *Troy A. Price*; and *Berliner Corcoran & Rowe LLP*, by: *Melvin White*, *pro hac vice*, for appellant.

*Roy C. Lewellen*, for appellee.