

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-1141

ARKANSAS DEPARTMENT OF HUMAN
SERVICES
                                    APPELLANT

V.

JONATHAN JONES
                                    APPELLEE

**Opinion Delivered:** May 31, 2017

APPEAL FROM THE CLARK
COUNTY CIRCUIT COURT
[NO. 10JV-15-39]

HONORABLE RANDY WRIGHT,
JUDGE

REVERSED

**WAYMOND M. BROWN, Judge**

Appellant Arkansas Department of Human Services (DHS) appeals the October 19, 2016 amended order by the Clark County Circuit Court finding it in contempt of court and ordering it to pay $1000 in attorney's fees to appellee Jonathan Jones's attorney. On appeal, DHS makes two arguments: (1) that there was no evidence that DHS was in contempt and (2) that ordering DHS to pay attorney's fees violates the doctrine of sovereign immunity. Because there was neither a valid criminal-contempt finding nor a valid civil-contempt finding, we reverse the fee award and the trial court's "contempt" designation.

The pertinent facts are as follows. There was an open dependency-neglect case concerning Jones. As part of the case plan, he was ordered to complete domestic-violence classes. In a review order filed on August 31, 2015, the court ordered DHS to "pay for the domestic violence classes for Jonathan Jones, Sr." DHS had problems securing Domestic

SLIP OPINION

Violence Prevention, Inc., as an appropriate vendor because the tax ID number found on the W9 submitted by the company was incorrect. As a result, no payments were initially made on Jones's behalf. Jones paid for the classes out of his own pocket and sought reimbursement from DHS. On January 20, 2016, Jones's attorney sent an email to DHS, stating the following:

> My client still has not been paid for his class expense. Additionally, the program is threatening not to allow him to continue classes if they are not paid.
>
> I am respectively asking that my client receive his check no later than 5 pm this Friday, January 22, or I will be forced to file a motion for contempt against the department for failure to comply with orders of the court.

DHS responded on January 28, 2016 stating:

> DCFS has informed me they have received Mr. Jones' W9 and should have a vendor number within 48 hours. At that point a number will be issued, he will need to sign an invoice, a purchaser order will be keyed and he will then be reimbursed. I'm staying on them about this as I feel it should have already been done. I will keep you posted. Sorry for the delay.

Jones filed a motion for contempt on February 29, 2016, contending that DHS had failed to reimburse him after being court-ordered to do so. Jones asked that he be awarded a "reasonable attorney's fee" for having to file the motion. DHS filed a response on March 21, 2016, asking that the motion be dismissed. In a review order filed on July 5, 2016, the court closed the dependency-neglect case against Jones; however, it left open the motion for contempt.

The court held a hearing on September 12, 2016, on Jones's motion. By that time, Jones had received his reimbursement from DHS. At the hearing, DHS explained that this was an unusual circumstance because they had to pay for classes on Jones's behalf, and reimburse Jones for payments he had already made. According to DHS, there were errors

made on both ends; however, it denied intentionally prolonging the process. At the conclusion of the hearing, the court stated the following:

> All right. Thank you, Counsel, both of you did a good job. I certainly don't find that Ms. Andres or Ms. Hrable or Ms. Rankin, anyone that's working, just trying to do what they're supposed to do. It seems like they were trying to do what they were supposed to do. But it's kind of like I hate to use this, but I'm going to, as an example. I went fishing one time, and the fishing trip ended up catching an alligator. I didn't want to be on that boat that caught the alligator. But as it was explained to me, if you're in the boat, you get the alligator. Because of the other person, we had to catch the alligator. It ruined our fishing trip for a while. But eventually we caught fish. And that's kind of what happened here. We're on the boat of getting these children back to reunification with their parents, and we get an alligator. Nobody's fault. But it's not Mr. Jones' fault, because he was doing everything he was supposed to do. It's not our local office's fault, because I believe they attempted in good faith to do what they were supposed to do. But it's all within the systemic nature of where we are today. We've got this alligator that we can't deal with special cases we can't deal with little special problems and make them happen quickly. This should've happened quickly. It could've resulted and it may have resulted in a longer time that the children were not back with the parents. I don't know. I don't have an opinion about that. But it may not have either. But it could've ended in a worse situation. Again, no fault of the people working the case. I truly believe, having been up here on many occasions, that this office of the Department of Human Services is a very good office. I'm not just saying that because you're in her[e]. I think you do a good job. ... But in this case, you know, we were just dealing with an alligator, and it just didn't get dealt with. I mean, everything turned out okay. You know, when Mr. Huber filed the motion, that brought up the idea that we've got to do something. It wasn't done. So the court will approve the attorney fees of a thousand dollars.

DHS objected arguing that it had not waived sovereign immunity and that domestic-violence education was not recognized as a family service. It told that trial court that it did not make the sovereign-immunity arguments initially due to "[t]rial strategy." The court gave both sides time to brief the issues. The court filed an order on October 6, 2016, finding DHS in contempt and awarding Jones's attorney $1000 in attorney's fees. The court filed an amended order on October 19, 2016, to "correct the date of the order for which this Court finds the Department in contempt for noncompliance and to clarify that this

Court did rely upon the briefs filed by the parties regarding the Department's objection to being ordered to pay attorney's fees." DHS filed a timely notice of appeal that same day.

As its first point on appeal, DHS argues that the court erred in finding it in contempt. Contempt is divided into criminal contempt and civil contempt.[1] Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders.[2] Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties.[3] Appellate courts have often noted that the line between civil and criminal contempt may blur at times.[4] The difference between civil and criminal contempt is that criminal contempt punishes while civil contempt coerces.[5]

Thus, in determining whether a particular action by a trial court constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding.[6] Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order.[7] This is the source of the familiar refrain that civil contemnors "carry the keys of their prison in

---

[1] *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Baggett v. State*, 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985).

[6] *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988).

[7] *Id.*

their own pockets."[8]  Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged.[9]

We must first decide whether the $1000 attorney's fee was really a "punitive fine" for criminal contempt.  A contempt fine for willful disobedience that is payable to the complainant is remedial, and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt.  Thus, it appears that the fee was based on civil contempt because it was not payable to the court, but instead, to Jones's attorney.   Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence.[10]   In order to establish civil contempt, there must be willful disobedience of a valid order of a court.[11] However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes.[12]

There are three problems with this case.  First, if DHS was found to be in civil contempt, the contempt should have been purged because DHS reimbursed Jones before the hearing on the motion. Second, if it was criminal contempt, DHS should have been required to pay a fine to the court.  However, neither is the case here and the record fails to demonstrate either form of contempt.

---

[8]*Id.*

[9]*Id.*

[10]*Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991).

[11]*Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002).

[12]*Id.*

Third, there is no factual basis for contempt. The order did not set out a time frame by which DHS was to pay for Jones's classes, and the order failed to mention reimbursement to Jones. The court made no finding that DHS willfully disobeyed the court order. In fact, it stated that DHS was "trying to do what [it] was supposed to do" and that DHS had acted in "good faith." Therefore, a finding of contempt under these circumstances is clearly against the preponderance of the evidence.

The facts of this case are like those found in *Applegate v. Applegate*.[13] In *Applegate*, the parties were divorced by a decree entered in October 2006. The decree ordered Clifford to pay certain judgments and marital bill, but did not set a time frame in which the payments were to be satisfied. Kimberly filed a motion for contempt in December 2006, claiming that Clifford had willfully disobeyed the order of the court because the debts had not been satisfied. A hearing on Kimberly's motion took place in February 2007. Clifford presented evidence that he had satisfied many of the debts that he was ordered to pay. The court found Clifford in contempt because he had not paid "certain bills" as ordered. Thus, Clifford was ordered to pay $500 in attorney's fees. Clifford timely appealed the court's order. On appeal, this court held that there was no valid civil or criminal contempt finding and that the record failed to demonstrate either. The court also noted that the decree failed to set out a time frame or definite terms by which Clifford was required to satisfy the debts. Additionally, the court noted that the trial court failed to make a finding that Clifford

---

[13]101 Ark. App. 289, 275 S.W.3d 682 (2008).

willfully disobeyed its order. The contempt finding was reversed as was the award of attorney's fees.

Just as the *Applegate* court, we reverse the trial court's order of contempt and the award of attorney's fees associated with it.[14]

Reversed.

HARRISON and VAUGHT, JJ., agree.

*Mary Goff*, Office of Chief Counsel, for appellant.

No response.

---

[14]Because we are reversing on the first point on appeal, we need not address DHS's argument concerning sovereign immunity.