I. Facts
Chris and Kerri divorced pursuant to a final order entered on October 14, 2015. At the time of divorce, the parties were real estate investors in Northwest Arkansas with a marital estate that included several million dollars' worth of income-producing property, most of which they handled by incorporating into the divorce decree a settlement agreement that divided the real properties they owned. Paragraph 11 of the order provided that each would have
the right of first refusal if the other elects to sell ... any of the properties awarded to them herein.... Failure to give notice of a party's election to exercise this first option within 10 days of being notified of the proposed sale shall be deemed a waiver of such a right.
The parties negotiated this right of first refusal because they each owned income-producing property in the same subdivisions; accordingly, each had an interest in acquiring the properties awarded to the other.
It is undisputed that the right-of-first-refusal language in the order was "short on detail" and provided neither the content of the notice to be sent when properties were to be sold nor the contents of any notice by the optionee to indicate a desire to exercise the right of first refusal. It simply provided that the failure to elect within ten days operated as a waiver of the right.
Chris planned to sell several of the parcels of real property awarded to him in the divorce. On February 7, 2017, he sent notice to Kerri in the form of a text stating that he was going to sell eight Stonegate duplexes for $215,000 and triplexes for $315,000. He indicated that he was sure she was not interested in buying, but that he was letting her know. In response, Kerri said she would like "to discuss the duplexes," but her response dealt primarily with a promissory note she held on which Chris was obligor.
Chris replied on February 13, 2017, that he had been informed by his attorney that Kerri might be interested in exercising her right to purchase the duplexes and that "if so, I need to know right away." Kerri sent no additional communication regarding the duplexes within ten days of that message from Chris because she was waiting for him to send her copies of the contracts he had obtained on those properties.
On March 25, 2017, Chris's assistant emailed to Kerri offers and acceptances regarding five additional lots that showed addresses and prices but redacted the buyers names and signatures. Kerri did not declare within ten days of the email that she wanted to buy any of these properties.
*922 Certain of these contracts were set to close on May 5, 2017.
On April 13, 2017, Chris sent Kerri full copies of the deeds of the eight lots he had under contract in February. Kerri again did not notify Chris within ten days of her intent to purchase any of these properties.
On May 3, 2017, Kerri filed an emergency motion for preliminary injunction and a motion for declaration regarding the parties' rights of first refusal, wherein she alleged that Chris had sold eight lots in the Stonegate subdivision (Eight Lots) and planned to sell an additional five lots in the Stonegate subdivision (Five Lots), all in contravention of her right of first refusal.[1] Kerri filed the motion for a preliminary injunction to halt the May 5, 2017 sales and requested a lis pendens be placed on every property that Chris owned, even those not in issue. Her motion acknowledged that she had been notified of Chris's plans to sell both the Eight Lots and the Five Lots but alleged that the notices were inadequate. Kerri also requested a declaration specifically defining the notice required by the final order. Kerri did not request that the trial court issue a show cause order to Chris, and the motion did not expressly seek a finding of contempt. Paragraph 21 of Kerri's motion did request an order "declaring that Chris Elder failed to substantially comply with the terms of the [Final Order] when he sold the [Eight Lots] that have already closed."
At the close of the hearing held on May 25, 2017, the trial court announced that the notice sent on March 27, 2017, with respect to the Five Lots that were scheduled to close starting May 5, 2017, was adequate, but that the notice sent on the Eight Lots under contract in February 2017 was inadequate. The trial court held Chris in contempt for his failure to provide Kerri her right of first refusal as to the Eight Lots, in direct violation of the trial court's final order, and directed Kerri to file a motion for attorney's fees within ten days of the entry of the order. The following day, Chris requested the trial court to reconsider its contempt finding, but his motion was denied on June 7, 2017. The final order was filed June 20, 2017. On July 3, 2017, Kerri filed a motion for a new trial. The trial court took no action; accordingly, it was deemed denied on August 2, 2017. Chris filed a notice of appeal on August 3, 2017, and Kerri filed a notice of cross-appeal on August 10, 2017.
When the notices of appeal were filed, there was pending before the trial court Kerri's motion for attorney's fees. Before the record was lodged in this court, the trial court on October 4, 2017, awarded attorney's fees to Kerri. Chris filed a second notice of appeal on October 5, 2017, including the order awarding fees and continuing his first notice of appeal.
II. Discussion
A. Direct Appeal
With respect to our standard of review, a finding of indirect contempt is reviewable de novo. Jones v. Jones , 320 Ark. 449, 898 S.W.2d 23 (1995). The trial court found Chris in contempt for violating the final order's right of first refusal. A right of first refusal is triggered only after the owner (1) receives an acceptable offer and (2) notifies the right holder of such offer. 3 Arthur L. Corbin, Corbin on Contracts § 11.3 (rev. ed. 1996). Courts agree that, at a minimum, notice must reasonably disclose the terms of the sale to trigger the right of first refusal. See, e.g. , John D. Stump & Assoc., Inc. v. Cunningham Mem. Park, Inc. , 187 W.Va. 438, 419 S.E.2d 699, 706 (Va. 1992)
*923 .
Chris challenges the trial court's finding him in contempt for the February 2017 sales of the Eight Lots without having given "adequate notice" to Kerri. Chris argues that the finding was erroneous because it was not based on a violation of any explicit statement in the final order either obliging him to offer notice or detailing how specific his conduct had to be. He further argues that the finding of contempt was entered without previous notice to him that he was being charged with contempt-notice that would have allowed him to offer "advice of counsel" defenses.
Arkansas has repeatedly recognized that before a person may be found guilty of contempt, he or she must have violated a court order that is definite in its commands and clear as to what duties it imposes. See Ark. Dep't of Human Servs. v. Jones , 2017 Ark. App. 365, 522 S.W.3d 853 ; Holifield v. Mullenax Fin. & Tax Advisory Grp. , 2009 Ark. App. 280, 307 S.W.3d 608 ; Applegate v. Applegate , 101 Ark. App. 289, 275 S.W.3d 682 (2008). See also Ivy v. Keith , 351 Ark. 269, 92 S.W.3d 671 (2002) ; Hodges v. Gray , 321 Ark. 7, 901 S.W.2d 1 (1995) ; Lilly v. Earl , 299 Ark. 103, 771 S.W.2d 277 (1989) ; Warren v. Robinson , 288 Ark. 249, 704 S.W.2d 614 (1986). Those commands must be express, rather than implied. Johnson v. Johnson , 343 Ark. 186, 33 S.W.3d 492 (2000) ; Allison v. DuFresne , 340 Ark. 583, 12 S.W.3d 216 (2000). When a party has done everything he or she is expressly ordered to do, it is error to hold a party in contempt. Id. When there is nothing in the court order to indicate a party's specific duty to do something, a party is free of contempt. See Lilly, supra.
Kerri's counsel acknowledged to the trial court that the final order was short on detail and did not specify the contents of any notice the parties were bound to give, and the trial court found that the final order was silent with respect to the contents of a notice.
Chris claims that he provided more information than the final order expressly ordered, and we agree. His February 2017 text to Kerri advising her that he was planning to sell "eight Stonegate duplexes for $215,000 and triplexes for $315,000" provided sufficient information to put Kerri on notice that she might inquire which specific duplexes and triplexes were to be sold if she were interested in exercising her right of first refusal. The text informed Kerri about the type of property (duplexes and triplexes) in a specific subdivision (Stonegate) and specified the prices he was seeking. Those details are not expressly required by the final order. We hold that the trial court erred in issuing, in effect, a retrospective finding of contempt by declaring what should have been done in the past and then holding Chris in contempt for not providing "adequate notice," as opposed to his having failed to perform a duty expressly required by the final order.
We disagree with Kerri's contention that her right of first refusal in connection with the Eight Lots that Chris sold and the minimum requirement of "reasonable notice of the essential terms of an offer" required that Chris "provide a copy of the bona fide offer to purchase." The express terms of the final order do not require a seller to give "market information" about a mere offer that is presented.
This court "will not reverse a finding of civil contempt unless it is clearly against the preponderance of the evidence." Nat'l Ass'n for the Advancement of Colored People v. Bass , 2017 Ark. App. 166, at 7-8, 519 S.W.3d 336, 341, reh'g denied (Apr. 19, 2017). "A finding of contempt is clearly against the preponderance *924 of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." Id. While there is no question that "willful disobedience of a valid order of a court is contemptuous behavior," Ivy , 351 Ark. at 279, 92 S.W.3d at 677 ; see also Cartwright v. State , 2016 Ark. App. 426, at 11, 501 S.W.3d 859, 868, we hold that Chris did not willfully disobey the requirements of the final order because it was not definite in its commands regarding the notice to be given and did not clearly express what duties it imposed.
Moreover, because Chris's alleged contemptuous actions occurred outside the immediate view and presence of the trial court, he was entitled to "noti[ce] of the accusation and ... a reasonable time to make his ... defense." Ark. Code Ann. § 16-10-108(c) (Repl. 2010). See id. We disagree with Kerri's claim that when she filed her emergency motion for preliminary injunction and motion for declaration regarding the parties' rights of first refusal on May 3, 2017, she provided more than sufficient notice with respect to a finding of contempt by seeking a finding that he had violated the final order in denying her the right of first refusal and that he had done so in bad faith. It is undisputed that Kerri's motion did not contain the term "contempt" nor did the summons that was served, and we hold that Chris's responding to Kerri's motion and appearing before the trial court on May 25, 2017, to defend against it is not synonymous with being notified of and defending against a specific contempt charge.
Despite Kerri's considering communications indicating parties, prices, and properties to be inadequate-claiming that Chris should also tell her how much rent he was getting on any property he was selling as well as the commission he was paying-the final order drafted by the parties failed to specify how notice was to be given, what it would contain, and when it was to be transmitted. While the trial court properly made these determinations in its June 20, 2017 order with respect to the parties' proper procedures going forward, it erred in finding Chris in contempt with respect to the Eight Lots.
Because we reverse the trial court's contempt finding in its June 20, 2017 order, we also reverse the trial court's October 4, 2017 order awarding attorney's fees pursuant to the petition filed by Kerri at the direction of the trial court upon its announcement of the finding of contempt against Chris.
B. Cross-Appeal-Notice Regarding Five Lots
Kerri argues on cross-appeal that the trial court improperly found that her right of first refusal expired for the Five Lots that Chris had contracted to sell. She claims that Chris provided only a general notice as to these lots, consisting of partially legible, single-page offers to sell. Kerri submits that she asked Chris for more information so that she could determine whether to exercise her right of first refusal but that Chris did not provide any additional information beyond the initial disclosure of price, address, and partially legible contracts to sell. Kerri argues that the trial court incorrectly found that Chris satisfied his duty to notify her through only his initial general disclosure. She claims that the trial court also incorrectly concluded that Kerri never requested more information or indicated any intent to exercise her right of first refusal on the Five Lots. We disagree.
Chris received offers to buy the Five Lots in March 2017. On March 25, 2017, Chris's assistant, Hannah Murphey, sent an email to Kerri with unsigned, single-page offers for each of the Five Lots. Kerri, upon receiving the notice that she *925 deemed insufficient, emailed Chris the same day and asked for complete, signed contracts, as well as additional information regarding the Five Lots that Chris had provided to the potential buyers so that she could determine whether to exercise her right of first refusal. She acknowledges that Chis responded to this email, but she claims that he did not provide full contracts or any other information, claiming that Kerri was not entitled to "look at any contracts." On March 27, 2017, Kerri sent Chris a text stating, "I told you I was interested in purchasing any Stonegate.... I will be exercising my rights through the decree." Kerri again asked for the full contracts and informed Chris that she intended to exercise her right of first refusal. Within two days of receiving the unsigned, illegible offers to buy, Kerri claims that she satisfied her obligations under the final order.
Kerri argues that Chris violated the final order-and thus her right of first refusal-when he failed to respond to her request for additional information. Kerri asserts that Chris never provided her any additional information as to the Five Lots; instead, he scheduled closings. Kerri notes that she filed her emergency motion for preliminary injunction on May 3, 2017, once it became clear that Chris had no intention of allowing her the opportunity to exercise her right of first refusal.
Kerri argues that the trial court erred as a matter of law in denying her motion and allowing Chris to close on the Five Lots. She submits that the law imposes a duty on the owner to provide reasonable notice of a planned sale that implicates a right of first refusal, and Kerri submits that Chris failed to do so. Kerri urges that the analysis does not end with the initial notification, noting that the law imposes additional duties beyond just the initial notice. Kerri claims that she satisfied her duty to seek additional information after she received insufficient notice to make an informed decision about whether to exercise her right when she both emailed and texted Chris seeking additional information. She contends that Chris then failed to satisfy his duty to respond to her inquiry and to act timely, reasonably, and in good faith when he wholly refused to provide the complete contracts or any other information. Accordingly, Kerri maintains that the trial court erred in concluding that her right of first refusal with respect to the Five Lots had expired.
Chris notes that despite Kerri's allegations that one of the five contracts received by her was illegible, she did not mention "illegibility" in her response to him. He maintains that what angered Kerri was that "incomplete" (i.e., unsigned by buyers) contracts were sent to her, despite her counsel telling Chris's counsel that contracts could be redacted. Instead of responding with an acceptance within ten days of March 25, 2017, which was her duty, Kerri indicated that she was "interested" in the Stonegate properties. It is undisputed that she provided no signature, earnest money, statement of "interest," etc., that might constitute an "acceptance." Equivocal statements are insufficient to bind either Kerri or Chris. See Restatement (Second) of Contracts § 57. We agree that Chris provided Kerri sufficient information, specifically lot numbers and prices, to make a decision regarding her right of first refusal with respect to property that she previously had managed and owned. Accordingly, we affirm on cross-appeal.
Reversed on direct appeal; affirmed on cross-appeal.
Gruber, C.J., and Abramson, J., agree.

The parties owned sixty total lots in the Stonegate subdivision at the time of divorce, and each was awarded approximately half of these lots.