BART F. VIRDEN, Judge
Danny L. Burrow appeals from the Craighead County Circuit Court order *502 finding him in contempt of court, imposing fines and costs, sentencing him to twenty days in jail, and awarding appellee attorneys' fees. We affirm.
I. Facts
On October 31, 2003, Rick Tubbs, owner of J.T. White Hardware & Lumber Company, filed a motion for default judgement against Danny and Shena Burrow. On July 1, 2004, the Craighead County Circuit Court granted the motion and awarded Tubbs $9,127.92 in damages plus interest and $1,000 in attorney's fees. The circuit court also ordered the Burrows to file a verified affidavit of property. In 2006, the circuit court issued a writ of execution ordering the sheriff of Craighead County to take into his possession a Lexus, a tractor, and a dump trailer, or any other personal property or money in the amount of the owed sum. On March 10, 2006, the writ was returned, and it set forth that the personal property that had been located was encumbered by liens or belonged to Burrow's mother. The undiscovered property had been sold, according to Burrow, and no assets were collected as a result of this writ.
In September 2015, Tubbs learned that Danny Burrow owned several antique vehicles, and the circuit court issued another writ of execution. The writ commanded the Craighead County sheriff to take possession of six vehicles: a 2007 Ford Mustang, a 1964 Ford Fairlane, a 1972 Chevrolet El Camino, a 2012 Cadillac SRX, a 2012 Ford F-150 crew cab, and a 1970 Chevrolet C10 truck. By this time, $6,139.96 in interest had accrued on the default judgment, and including credits and setoffs, the circuit court found that the Burrows owed $16,412.88 plus any interest that would continue to accrue.
On December 16, 2015, Tubbs petitioned the court to reopen the case for purposes of collection. The court issued a subpoena duces tecum ordering Danny Burrow to appear for deposition and to produce, among other things, any and all documentation regarding the six vehicles described in the writ, documentation of his ownership or lease of the "shop building," and an itemized list of the contents of the shop building. Burrow presented himself for deposition on or around January 13, 2016,[1] and he responded to questions regarding his ownership of the vehicles listed in the writ and the location of those vehicles.
On January 12, 2016, a writ of execution was issued to the sheriff of Craighead County and to the sheriff of Cross County. On February 3, 2016, Lieutenant Philip Wheaton of the Craighead County Sheriff's Office entered certification that he served Danny Burrow with the writ on January 13, 2016, at 1:13 p.m. In the writ, Wheaton stated that he located the vehicles at 2210 Conrad Drive and 4208 Sydney Cove in Jonesboro and that he took possession of the Fairlane and the El Camino. The writ showed that on January 20, 2016, at 3:20 p.m., Burrow paid the writ in full, and the vehicles were released to him.
On March 3, 2016, Tubbs filed a petition to show cause why Burrow should not be held in contempt of court. In the petition, Tubbs alleged that Burrow had refused to comply with the circuit court's default judgment. Specifically, Tubbs stated that *503 Burrow had not filed a schedule of assets within forty-five days of the 2004 default judgment, he had hidden his assets, he had refused to produce documentation regarding the assets, he had lied under oath regarding his assets, and he had otherwise refused to cooperate with Tubbs's attempts to collect on the default judgment. Tubbs asserted that Burrow's actions "interfered with the Court's Default Judgment filed on July 1, 2004, and with a subpoena duces tecum issued to defendant on December 16, 2015." Tubbs alleged that Burrow, through his attorney, sent a letter to Tubbs's attorney stating that all the vehicles listed in the writ of execution were encumbered by liens. In a second letter sent two days later, Burrow reported that all the vehicles listed in the writ, except the Cadillac, had been sold before the writ issued. Tubbs attached both letters to his petition, and he also attached title registration and lien reports showing that Burrow held the title to the El Camino and the Fairlane and that the cars were unencumbered by liens. In an affidavit attached to the petition, Tubbs described in detail Burrow's multiple attempts to hide the El Camino and Fairlane and the measures Tubbs had been required to take to find the property. Tubbs also attached Burrow's recent deposition in which he denied any knowledge of the location of the cars.
On December 14, 2016, the circuit court held a show-cause hearing for Burrow to explain why he should not be held in contempt. Burrow chose not to testify, and excerpts from his deposition were read into evidence. In his deposition Burrow claimed that he had forgotten to bring both his tax returns and any paperwork on the cars regarding ownership or sale of the vehicles. Burrow stated that the only car he currently owned was the Cadillac. Burrow stated that in September 2015, he sold the Fairlane at a Kentucky car show to a man from Colorado, and he sold the El Camino at a Nashville car show to a man from Mississippi. Both were cash-for-title sales, and he had no paperwork from the sales. Burrow explained that he had spent the proceeds, $14,500, on his wife's medical bills. Burrow admitted that on October 14, 2015, he sent a letter through his attorney to Tubbs stating that all vehicles listed in the writ of execution, including the El Camino and the Fairlane, were encumbered by liens. Burrow also admitted that two days later he caused his attorney to send a second letter in which he claimed that all the vehicles listed in the writ (except the Cadillac, on which he stated that he owed $9,000) had been sold before the writ issued. Both of these letters were inaccurate, and Burrow explained that he had mistakenly given his attorney "misinformation." Specifically, Burrow testified that "not all the liens were at the banks," and he actually did not owe money on the El Camino, the Fairlane, or the 1970 pickup truck.
In his deposition, Burrow was shown photographs taken on January 12, 2016, of both the El Camino and the Fairlane located in a shop in Wynne owned by a man named Nub Ramsey. Burrow admitted that he knew Ramsey; however, he denied knowing where Ramsey's shop was located, and he could not explain why his cars had been in Ramsey's shop. Burrow was shown more photographs taken on January 12, 2016, this time of his vehicles parked at 4208 Sydney Cove, # 38, and 2210 Conrad Drive in Jonesboro. The latter of the two addresses is the home of Burrow's brother Bobby at the Kenwood Pointe apartment complex. Burrow again denied knowledge or ownership of the vehicles, and he denied knowing where his brother lived, though he admitted that he talked to his brother several times a week. Burrow stated that he had spoken to his *504 brother the morning of the deposition but that Bobby had not mentioned the two cars during their conversation. Burrow supposed that he would have to ask his brother about the matter.
Burrow was also presented with registration and lien-report summaries obtained from the Arkansas Department of Motor Vehicles showing him as the registered owner of the El Camino, the Fairlane, the 2007 Mustang, and the 2012 Cadillac. Burrow could not explain why he was still listed as the owner on the title.
At the hearing, there was extensive testimony from Tubbs, Lieutenant Wheaton, and private investigator Mauri Cole regarding the events leading up to Burrow's payment of the writ on January 20, 2016. Tubbs testified that on January 12, 2016, he received a phone call from Nub Ramsey, who reported that he was storing a 1964 Fairlane and a 1972 Chevrolet El Camino in his shop in Wynne. Ramsey told Tubbs that he had been informed that the owner was hiding the vehicles to avoid a court judgment, and when he realized this he called Tubbs to inform him of the location of the vehicles. Tubbs explained that after he had talked to Ramsey, he hired private investigator Mauri Cole to photograph the vehicles at Ramsey's shop, which Cole did. Tubbs testified that after observing the cars for about an hour, the El Camino and the Fairlane were driven away, and Cole followed the cars to Jonesboro. The driver of the El Camino parked the car in the parking lot of Bobby Burrow's apartment located at 2210 Conrad Drive, and the Fairlane was parked a couple of miles away at 4208 Sydney Cove, # 38. Tubbs stated that Cole photographed the parked cars, and while he was there Cole ran the Vehicle Identification Numbers ("VIN"). Cole reported to Tubbs that the El Camino and the Fairlane were registered to Danny Burrow and that the cars were unencumbered by liens.[2] Tubbs estimated the cost of discovering Burrow's assets to be $2,672.51, and he estimated $7,257.50 in attorney's fees.
Lieutenant Wheaton testified that in October 2015, he served the writ of execution on Shena Burrow at the Burrows' home where he saw the Mustang, the Cadillac, the Fairlane, and the El Camino that were listed in the writ. Lieutenant Wheaton explained that he customarily gives the subject of a writ of execution a chance to get resources together, and he comes back later to take possession of the property if necessary. Wheaton testified that he again served Burrow on January 13, 2016, and that he took possession of the El Camino and the Fairlane at that time. The two vehicles had been at the impound lot for a week when Burrow paid the writ in full, and the cars were released to him. Lieutenant Wheaton stated that the vehicles would not have been released to Burrow if he had not provided proof of an ownership interest in them. Lieutenant Wheaton also recounted that Burrow told him that the Mustang belonged to his son, and the Fairlane and El Camino belonged to his brother.
Burrow moved to dismiss arguing that the writ of execution directed the sheriff to act and did not order Burrow to do anything; thus, he was not the subject of any court order, and he could not be held in contempt. Burrow asserted that the only order he did not comply with, the order requiring him to file a schedule of his assets within 45 days associated with the *505 2004 order, became moot when he paid the default judgment.
On January 27, 2017, the circuit court entered an order setting forth the following relevant findings of fact and conclusions of law: Lieutenant Wheaton served the writ on Shena Burrow at the Burrow home, and at that time, the El Camino and the Fairlane were on the premises. Burrow caused his attorney to contest seizure by contending that his vehicles were encumbered by liens and then a few days later by contending that the vehicles had been sold before the execution of the writ. Later, the vehicles had been removed. At the time the writ was executed, Burrow owned the vehicles, he had knowledge of the service of the writ, he had taken active measures to frustrate the writ by hiding the cars and by lying in his deposition, and it had been necessary for Tubbs to employ a private investigator to find the cars. Tubbs had incurred attorney's fees and expenses that would not have occurred but for Burrow's actions.
The circuit court found Burrow in contempt of court, holding that Arkansas Code Annotated section 16-10-108 (Repl. 2010) provides that the court shall have the power to punish by holding a party in criminal contempt for willful disobedience of any process or order lawfully issued or made by the court or for resistance willfully offered by any person to the lawful order or process of the court. The circuit court found that a writ of execution is a process of the court.
Burrow was sentenced to twenty days in the county jail, fined $500, and ordered to pay $10,000 in attorney's fees. He filed a timely notice of appeal.
II. Issues on Appeal
On appeal, Burrow argues that the circuit court erred by finding him in contempt of court because he did not violate the process of court or an order of the court; thus, the circuit court erred by employing the penalties of contempt-sentencing the contemnor to jail, imposing fines, and awarding costs and attorney's fees. Because it is not clear whether Burrow was held in criminal or civil contempt and our standard of review differs for criminal and civil contempt, we must first address the preliminary issue of the nature of the contempt found by the court.
In determining whether a particular action by a court constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. Ivy v. Keith , 351 Ark. 269, 280, 92 S.W.3d 671, 678 (2002). Criminal contempt vindicates the power and dignity of the court and constitutes punishment for disobedience of its orders, while the purpose of civil contempt is to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. Stehle v. Zimmerebner , 2016 Ark. 290, 497 S.W.3d 188. Because civil contempt is designed to coerce compliance with the court's order, the contemnor may free himself or herself by complying with the order. Conlee v. Conlee , 370 Ark. 89, 257 S.W.3d 543 (2007). As we have stated many times, civil contemnors "carry the keys of their prison in their own pockets." Ivy , 351 Ark. at 280, 92 S.W.3d at 678. Criminal contempt, by contrast, carries an unconditional penalty solely and exclusively punitive in character and the contempt cannot be purged. Fitzhugh v. State , 296 Ark. 137, 752 S.W.2d 275 (1988). The appellate courts have often noted that the line between civil and criminal contempt may blur at times. Ivy , 351 Ark. at 280, 92 S.W.3d at 677.
The circuit court's order that Burrow serve a twenty-day jail sentence is *506 clearly punitive because it is for a set amount of time that is not related to any requirement of the court that, if complied with, would end the sentence. The $500 fine payable to the court is also purely punitive and in the nature of criminal contempt. The circuit court's award of attorney's fees, however, is in the nature of civil contempt. We addressed the issue of whether the award of attorney's fees is a form of civil or criminal contempt of court in Applegate v. Applegate , 101 Ark. App. 289, at 293-94, 275 S.W.3d 682, 685 (2008). We held:
[O]ur supreme court has set a bright-line rule that aids our resolution of the first question before us-whether the $500 attorney fee was in essence a "punitive fine" for criminal contempt. A contempt fine for willful disobedience that is payable to the complainant is remedial, and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt.
(Citations omitted.)
We hold that the circuit court found Burrow in both criminal and civil contempt, and we turn to the issue of whether the circuit court erred by doing so. The standard of review in a case of criminal contempt requires the appellate court to view the record in the light most favorable to the circuit court's decision and to sustain that decision if it is supported by substantial evidence. James v. Pulaski Cty. Cir. Ct. , 2014 Ark. 305, 439 S.W.3d 19. Substantial evidence is evidence of sufficient force and character that it compels a conclusion one way or another, forcing the mind to pass beyond suspicion and conjecture. Id. Issues of credibility are for the fact-finder. Balcom v. Crain , 2016 Ark. App. 313, at 5, 496 S.W.3d 405, 408.
Arkansas Code Annotated section 16-10-108 provides:
(a) Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts and no others:
...
(3) Willful disobedience of any process or order lawfully issued or made by it;
(4) Resistance willfully offered by any person to the lawful order or process of the court; and
...
(b)(1) Punishment for contempt is a Class C misdemeanor.
(2) A court shall always have power to imprison until its adjournment.
Ark. Code Ann. § 16-10-108 (a)(3)-(4), (b)(1)-(2).
Burrow argues that because the writ of execution directed an officer of the sheriff's office to act and did not direct Burrow himself, he did not willfully disobey or resist any process or order of the court. His argument is not well taken. In Carle v. Burnett , 311 Ark. 477, 845 S.W.2d 7 (1993), our supreme court recognized that Ark. Code Ann. § 16-10-108(a)(3) is not a limitation on the power of the court to impose punishment for disobedience of process. The court held that the term "process" in the sense of the statutes is a comprehensive term that includes "all writs, rules, orders, executions, warrants, or mandates issued during the progress of an action." Carle , 311 Ark. at 483, 845 S.W.2d at 11.
Our supreme court has held that when a person resists process or evades or circumvents an officer in the service of process, and the actions of the person are sufficient to amount to contempt of court, he or she is disobedient of process. Bryan v. State , 99 Ark. 163, 137 S.W. 561 (1911). In Bryan , the Bryan brothers were running a gambling room in Hot Springs at the time a warrant commanding police officers *507 to search for gambling devices was issued. Someone tipped off the Bryans that a warrant was about to be served. When the officers reached the room, they found one of the brothers standing outside the area to be searched, and they demanded the key to the door, which he denied having in his possession. By the time the police entered the room, the gambling devices described in the warrant had been removed and hidden. They were later found by the officers. The Court held that
[i]t is unnecessary to go to the extent in this case of holding that merely secreting property, which the officer is seeking to seize, constitutes contempt, but where, as in this case, the officer, by some device or deception, is hindered or delayed in the prompt execution of the process, we hold that this constitutes contempt, even though there is no force or intimidation, or direct refusal to obey the process.
In Bryan , the search warrant directed the officers to search the property and seize the gaming machines; similarly, in the instant case, the circuit court's writ of execution directed the sheriff, and not Burrow, to act. Burrow was held in contempt of court for hindering the execution of the writ by hiding property after he had been served, by having his attorney write two letters containing false information regarding the cars, and by lying in his deposition about his ownership of the cars and the location of the cars. When confronted with registration and lien information, Burrow denied ownership of the vehicles, and several witnesses testified about the measures Burrow had taken to avoid execution of the writ. Burrow's elaborate deception clearly constitutes resistance to the process of court, and Burrow's actions are punishable by the court through its contempt power.
Moreover, this court has previously held that even one who is not party to an action may be held in contempt. In Arkansas Department of Human Services. v. Gruber , 39 Ark. App. 112, 115, 839 S.W.2d 543, 544 (1992), the department argued on appeal that the circuit court erred in holding it in contempt after one of its representatives failed to appear at a placement hearing. This court rejected the Department's argument and held that "[e]ven one not a party to an action, who has been served with an order, or who has notice of it, may be held in contempt of the order." Similarly, in Omni Holding & Development Corp. v. 3D.S.A., Inc. , 356 Ark. 440, 455, 156 S.W.3d 228, 239 (2004), our supreme court held that a nonparty who has "full knowledge of a court order and its import cannot flout it with impunity." In the instant case, it is clear that Burrow flouted the order of the court.
The evidence that Burrow actively and knowingly interfered with the process of court is of sufficient force and character for the circuit court to have held Burrow in criminal contempt. See James, supra. Viewing the record in the light most favorable to the circuit court's decision and without resorting to suspicion and conjecture, we affirm.
Furthermore, because the evidence in the instant case supports the circuit court's finding of criminal contempt, which is subject to a higher standard of review than a finding of civil contempt, we hold that the circuit court did not err when it awarded attorney's fees which are in the nature of civil contempt.[3]
*508 For the first time on appeal, Burrow argues that "there is no caselaw, precedent, or legal authority under the criminal contempt statute for the trial court (as the trier of fact) to hold a person in criminal contempt of court for not being truthful in a deposition" and that the circuit court violated his "constitutional rights that all criminal defendants are entitled to" by finding him in contempt for giving false testimony in his deposition. Burrow asserts that the proper way to pursue the allegation that he lied in his deposition is to file perjury charges against him and prove the elements of the crime beyond a reasonable doubt. Burrow failed to make these arguments to the circuit court; thus, we are unable to address his argument. This court will not consider arguments that are not preserved for appellate review. Stacks v. Stacks , 2009 Ark. App. 862, at 4, 377 S.W.3d 265, 269. It is incumbent on the parties to raise arguments initially to the circuit court in order to give that court an opportunity to consider them. Balcom , 2016 Ark. App. 313, at 3, 496 S.W.3d at 407.
Affirmed.
Klappenbach and Murphy, JJ., agree.

The record shows both January 11 and January 14, 2016, as the dates of the deposition, and there was testimony that the deposition took place "on or around" January 14. The deposition transcript shows that the parties were interrupted briefly when Lieutenant Wheaton served Burrow with the writ of execution, and the returned writ shows that it was served on January 13, 2016. The discrepancies in the dates are not an issue in this case and do not affect the outcome of this case.

Later at the hearing, Cole testified to the same facts-that on January 12, 2016, he found the cars at Ramsey's shop in Wynne, he followed the cars to Jonesboro, and he ran the VINs on the cars and learned that Burrow was the registered owner and the cars were unencumbered by liens.

Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. Applegate , 101 Ark. App. at 294, 275 S.W.3d at 686.