Cite as 2021 Ark. App. 402

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-20-654

| | |
|---|---|
| MARY CHOATE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS & J.J.<br>APPELLEES | **Opinion Delivered** October 20, 2021<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46JV-19-113]<br><br>HONORABLE KIRK JOHNSON, JUDGE<br><br>REVERSED AND DISMISSED IN PART; DISMISSED IN PART |

## LARRY D. VAUGHT, Judge

Mary Choate appeals two orders entered by the Miller County Circuit Court: an October 30, 2020 order finding her in contempt of court and sentencing her to thirty days in jail, with twenty days suspended, and imposing a $500 fine; and a September 5, 2019 order restraining her from being within 1000 feet of her place of employment. We reverse and dismiss the October 30 order, and we dismiss the appeal related to the September 5 order.

In January 2019, Choate was hired by the newly elected Miller County judge Cathy Hardin Harrison to serve as a consultant for the Miller County juvenile detention center (JDC). Part of Choate's responsibilities included addressing operational costs at the JDC. In May, Choate was made the administrator of the JDC. Tyna Nix was a long-time employee of the JDC and had served as the administrator before Choate.

When Choate arrived at the JDC, she noticed that some employees would "disappear" from the facility during the workday. According to Choate, Nix was one of the employees who was often away from the JDC premises. Choate spoke with Nix about this, and Nix told Choate that she was often in juvenile court when she was away from the JDC. When Choate asked Nix why she was in court, Nix said that for twenty years a representative of JDC was in court in case the judge had any questions. Choate said that Nix was no longer permitted to go to court.

On Tuesday, August 20, 2019, Nix was asked by Holly Giles, the juvenile-court intake officer, to ride along with an officer who was transporting a female juvenile detainee the following day, and Giles told Nix she (Giles) would cover Nix in court. When Nix reported this to Choate, Choate made arrangements for another employee to do the ride-along, and she told Nix not to go back to court.

On the morning of Wednesday, August 21, Nix received a call from Lisa Houser, the assistant for Judge Kirk Johnson of the Miller County Circuit Court, asking where Nix was. Nix told Houser she was not permitted to go to court. Houser asked to speak with Nix's supervisor, but Nix said she was not available. Houser then asked Nix to come to court for the juvenile hearings because the judge had requested her presence. Nix left the JDC for court.

While waiting outside the courtroom, with multiple other witnesses in the area, Nix and Giles were approached by Choate. Choate asked Nix whether she was taking the day off, and if not, she needed to leave. Choate told Nix that she (Choate) was in charge at the JDC and that if Nix wanted to keep her job, she better get her "tail" back to the JDC. Nix told Choate that she (Nix) had been asked to be there by the judge, to which Choate responded by

2

saying that Nix better not be "manipulating" her (Choate). Then Choate left. Witnesses described Choate as angry, aggressive, harsh, upset, loud, agitated, and unprofessional. Witnesses said that Choate was in Nix's face and was pointing her finger at Nix. Following the encounter, which by all accounts was less than twenty seconds long, Nix testified in two juvenile cases.[1]

On September 5, 2019, the circuit court entered two orders. In the first order, the court found that Choate had "displayed outrageous behavior, coercion, and intimidation in public unbecoming a supervisor by threatening [Nix] with termination while [Nix] was obeying a summons from the Circuit Court to attend juvenile court on August 21, 2019." The court also found that a toxic work environment had been created at the JDC and that retaliation against JDC employees was a possibility, so the court restrained and enjoined Choate from being within 1000 feet of the JDC or the juvenile court offices.

In the second September 5 order, the circuit court ordered Choate to show cause as to why she should not be held in contempt for instructing an employee to not comply with a summons by the circuit court to appear to give testimony on August 21 and for being disorderly by verbally abusing and threatening the employee who appeared per order of the court. A show-cause hearing was held on August 18, 2020. Following the testimony of eleven witnesses, the circuit court orally found Choate in contempt of court, finding that she "chose to usurp the power of the court to call any witness it felt was necessary to provide information

---

[1]Choate's appeal of the orders in this case arises from one of the two cases in which Nix testified on August 21—case No. 46JV-19-113 involving juvenile JJ. Choate has filed a separate appeal of the same orders that were entered in the other case in which Nix testified on August 21—case No. 46JV-19-112 involving juvenile TJ. The companion appeal is *Choate v. State*, 2021 Ark. App. 397, which is also handed down today.

3

on a pending case," and that Choate chose to "get down into a witness I summonsed and berate her and threaten her." The court sentenced Choate to serve thirty days in jail, with twenty suspended, and ordered her to pay a $1000 fine.

On October 30, 2020, the court entered an order finding that it had been informed by Houser that Nix was not present for court because she had been instructed by Choate not to go; the court attempted to call Choate to discuss her position but was unable to make contact with her; and after not being able to reach Choate, the court directly summoned Nix to appear. The court further found that Choate attempted to interfere and intimidate a duly summoned witness to appear to testify in court. On the basis of these and other findings, and relying on the holding in *Arkansas Department of Human Services v. Dowdy*, 2018 Ark. 307, 558 S.W.3d 847, the circuit court found Choate in criminal contempt of court and sentenced her to thirty days in the county jail, with twenty days suspended, and reduced her fine to $500. Choate appeals from the September 5, 2019, and the October 30, 2020 orders.

The standard of review in a case of criminal contempt requires the appellate court to view the record in the light most favorable to the circuit court's decision and to sustain that decision if it is supported by substantial evidence.[2] *Burrow v. J.T. White Hardware & Lumber Co.*, 2018 Ark. App. 212, at 10, 547 S.W.3d 500, 506. Substantial evidence is evidence of sufficient force and character that it compels a conclusion one way or another, forcing the mind to pass

---

[2]Citing *Elder v. Elder*, 2018 Ark. App. 276, 549 S.W.3d 919, Choate argues that this court should review her appeal under the de novo standard of review. In *Elder*, this court stated that a finding of civil contempt will not be reversed unless it is clearly against the preponderance of the evidence. *Id.* at 5, 549 S.W.3d at 923. The standard of review employed in *Elder* does not apply to Choate's criminal-contempt case.

4

beyond suspicion and conjecture. *Id.*, 547 S.W.3d at 506. Issues of credibility are for the fact-finder. *Id.*, 547 S.W.3d at 506.

Arkansas law distinguishes criminal and civil contempt. Criminal contempt vindicates the power and dignity of the court and constitutes punishment for disobedience of its orders, while the purpose of civil contempt is to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Id.* at 9, 547 S.W.3d at 505. Choate was found in criminal contempt.

Arkansas law also distinguishes between direct and indirect contempt. Direct contempt is a contemptuous act "committed within the immediate presence of the [c]ourt . . . ." *Ivy v. Keith*, 351 Ark. 269, 281, 92 S.W.3d 671, 678 (2002) (quoting *Davis v. Merritt*, 252 Ark. 659, 670, 480 S.W.2d 924, 930 (1972)). Indirect contempt is contemptuous behavior committed outside the presence of the court. *Id.*, 92 S.W.3d at 678. Because the alleged contempt by Choate occurred outside the presence of the circuit court, it is indirect contempt.

The court's authority to punish for direct and indirect criminal contempt is governed by statute:

> (a) Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts and no others:
>
> (1) Disorderly, contemptuous, or insolent behavior committed during the court's sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority;
>
> (2) Any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings;
>
> (3) Willful disobedience of any process or order lawfully issued or made by it;
>
> (4) Resistance willfully offered by any person to the lawful order or process of the court; and

(5) The contumacious and unlawful refusal of any person to be sworn as a witness and when so sworn a similar refusal to answer any legal and proper interrogatory.

Ark. Code Ann. § 16-10-108 (a)(1)–(5) (Repl. 2010). The power to punish for contempt is inherent in courts, and they may go beyond the powers given by statute. *Carle v. Burnett*, 311 Ark. 477, 483, 845 S.W.2d 7, 11 (1993). Our supreme court has interpreted section 16-10-108(a)(3) and held that it is not a limitation on the power of the court to impose punishment for disobedience of process. *Id.*, 845 S.W.2d at 11.

Choate's first argument on appeal is that the circuit court erred in finding her in criminal contempt of court in its October 30 order. She argues that the only categories of contempt in section 16-10-108 that could apply are the third and fourth categories, and she contends that they do not apply because there is no evidence that the circuit court issued any written order or process directed to her or anyone else. Choate is correct that the circuit court did not issue any written order or process in this case.

Arkansas has repeatedly recognized that before a person may be found guilty of contempt, he or she must have violated a court order that is definite in its commands and clear as to what duties it imposes. *Elder*, 2018 Ark. App. 276, at 5–6, 549 S.W.3d at 923 (citations omitted). However, in *Carle*, the supreme court held that an attorney who refused to attend his client's trial after the court verbally ordered him to do so constituted disobedience of process. 311 Ark. at 483, 845 S.W.2d at 11. Therefore, a written order or process may not be required in the contempt context.

Choate alternatively asserts that if subsections 16-10-108(a)(3)–(4) can be read to contemplate verbal orders, there is no evidence that she willfully disobeyed or resisted a verbal

order because the record shows that she had no knowledge that Nix had been directed by the circuit court to appear in court. This court has recognized that even one not a party to an action, who has been served with an order, or who has notice of it, may be held in contempt of the order. *Ark. Dep't of Hum. Servs. v. Gruber*, 39 Ark. App. 112, 115, 839 S.W.2d 543, 544 (1992). It is undisputed that Choate was not served with an order of the circuit court in this case; therefore, the question is whether she had notice of one.

When viewing the facts in the light most favorable to the State, the record reveals that Choate was not aware of the court's custom of having a JDC representative in court on a weekly basis until August 20 when she was told about the custom by Nix. There is no evidence that this custom was communicated to Choate *by the court* either verbally or via a written order or process.[3]

The evidence further demonstrates that Choate did not learn that Nix had been personally summoned by the court's assistant on August 21 until halfway through the twenty-second exchange that took place between Nix and Choate outside the courtroom. Again, this information came from Nix—Choate's employee—not the court. And while there is evidence that after Choate learned that Nix had been summoned by the court, Choate told Nix, "You need to leave," Nix did not leave. She testified as scheduled. Even viewing this evidence in the light most favorable to the State, we hold that the August 20 and 21 conversations between Nix and Choate cannot be construed as notice to her of a definite court order. Accordingly,

---

[3]This is consistent with the testimony of County Judge Harrison, who stated that she was not aware of any policy or custom of the circuit court judges requiring a JDC employee to be in court every Wednesday morning.

we hold that there is a lack of substantial evidence supporting the finding that Choate willfully disobeyed or resisted an order or process of the court.

We also hold that the court's reliance on *Dowdy* is misplaced. In *Dowdy*, the appellants (DHS, its attorney, and its caseworker) were found by the circuit court to be in direct criminal contempt of court after DHS's attorney told the caseworker, who had been in court that day, to leave the courthouse when the hearing began so that she would not be able to testify. Our supreme court held that substantial evidence supported the contempt finding because the evidence showed that the attorney took affirmative action to absent the caseworker in order to prevent the other party and the court from presenting or considering evidence relevant to the case. 2018 Ark. 307, at 11, 558 S.W.3d at 854. The supreme court further found that this action occurred directly in front of the circuit judge and that it tended to disrupt the circuit court's proceedings and impair the respect due to the court's authority. *Id.*, 558 S.W.3d at 854.

*Dowdy* is distinguishable for several reasons. First, those held in contempt in *Dowdy* included a party, its attorney, and its employee, all of whom were directly involved in a case before the circuit court. In contrast, Choate was not a party, an attorney, or a witness nor was she otherwise involved with any case before the circuit court. Second, *Dowdy* is a direct-contempt case—the contemptuous behavior occurred in the presence of the court. In the case at bar, Choate's alleged contemptuous actions occurred outside the presence of the court and is subject to the restrictions in section 16-10-108. And third, the actions of the appellants in *Dowdy* disrupted the proceedings by preventing the admission of potentially relevant evidence. In contrast, Choate's exchange with Nix did not affect the court's proceedings in any way. The

8

hearing that was going on during the exchange between Nix and Choate was not disturbed, and Nix testified in the two juvenile cases as scheduled.

Instead, we liken the instant case to *Edwards v. Jameson*, 284 Ark. 60, 679 S.W.2d 195 (1984). In that case, the circuit court found the petitioners (who were parties in a case pending before the circuit court) in indirect criminal contempt of court after they cursed at the opposing attorney several times in the hallway of the courtroom after the legal proceedings had finished for the day. The petitioners filed a writ of certiorari requesting that the contempt finding be quashed, which our supreme court granted, stating:

> We do not find that we have ever held that mere spoken words to a lawyer out of the presence of the court, which make no threat or attempt to interfere in any proceeding, amount to criminal contempt. Although the words in the present case may have rendered petitioners responsible for some other charge or suit they did not amount to criminal contempt. We do not find any substantial evidence that petitioners had any intent to or did commit contumacious acts. We quash the contempt citations because the undisputed facts reveal that only words were spoken to the attorney at a time and place where they did not in any manner reflect upon the integrity of the court or interfere to any degree with its proceedings. Petitioners did not even by innuendo attempt to influence the outcome of the proceedings or intimidate any witness or officer of the court.

*Edwards*, 284 Ark. at 64, 679 S.W.2d at 197.

Similar to the facts in *Edwards*, the encounter between Nix and Choate took place in the hallway of the courthouse, only words were exchanged, no order or process was issued by the court, and no legal proceedings were disrupted as a result of the encounter. We acknowledge that the circuit court found that Choate "intimidated Nix for responding to the court order to appear to give testimony in two juvenile cases with a veiled threat to her job"; however, we hold that this finding does not dictate that we reach a result different than the result the supreme court reached in *Edwards*.

9

In conclusion, we do not condone Choate's behavior toward her employee, Nix. At best, it was unprofessional, and by multiple accounts, it was aggressive, harsh, and confrontational. However, even viewed in the light most favorable to the State, Choate's behavior simply does not rise to the level of indirect criminal contempt of court. Accordingly, we reverse and dismiss the October 30 order.

Choate's second point on appeal is that the circuit court erred when it imposed draconian punishments against her in its September 5 and October 30 orders. In light of our reversal and dismissal of the October 30 order, we do not reach the merits of her challenge to the punishment in that order. With regard to Choate's challenge to the punishment imposed in the September 5 order—restraining Choate from being within 1000 feet of the JDC or the juvenile court offices, we must dismiss that appeal for lack of jurisdiction.

Choate did not file a timely notice of appeal of the September 5 order, and it was an appealable order. Rule 2(a)(6) of the Arkansas Rules of Appellate Procedure–Civil provides: "An appeal may be taken from a circuit court . . . from . . . [a]n interlocutory order by which an injunction is granted . . . ." Ark. R. App. P.–Civ. 2(a)(6) (2021). The rule providing for appeals from injunctions is an *exception* to the general rule that appeals may be taken only from a "final judgment or decree." *Villines v. Harris*, 340 Ark. 319, 324, 11 S.W.3d 516, 519 (2000) (emphasis in original) (citing Ark. R. App. P.–Civ. 2(a)(1)). Because the September 5 order restrained and enjoined Choate from her place of employment, it granted an injunction and was an appealable order under Rule 2(a)(6).

An interlocutory appeal, however, was not required. Pursuant to Rule 2(a)(13), a civil or criminal contempt order, which imposes a sanction and constitutes the final disposition of

the contempt matter, is an appealable matter. Ark. R. App. P.–Civ. 2(a)(13). Moreover, under Rule 2(b), an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment. Ark. R. App. P.–Civ. 2(b). Therefore, the timely filing of a notice of appeal from the October 30 order could have brought up an appeal from the September 5 order if the notice had properly designated the September 5 order.

Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil provides in pertinent part that a notice of appeal or cross-appeal shall designate the judgment, decree, order or part thereof appealed from. Ark. R. App. P.–Civ. 3(e). The supreme court has stated that a notice of appeal that fails to designate the judgment or order appealed from as required under Rule 3(e) is deficient, but such a defect is not necessarily fatal to the notice of appeal where it is clear what order the appellant is appealing and the notice of appeal was filed timely as to that order. *Jewell v. Moser*, 2012 Ark. 267, at 4–5.

In the case at bar, Choate has failed to substantially, or otherwise, comply with Rule 3(e) as it relates to the September 5 order. There is no mention at all of the September 5 order in her notice of appeal. There are also no references in the notice to the findings the circuit court made in that order. The notice is completely silent with respect to the September 5 order.

An appellant must file a valid notice of appeal as a prerequisite to this court's exercise of appellate jurisdiction over appellant's case. *Evans v. Deboer*, 2009 Ark. App. 149, at 1. Because no valid, timely notice of appeal has been filed in this case in relation to the September 5 order, we dismiss Choate's appeal of that order for lack of jurisdiction.

Reversed and dismissed in part; dismissed in part.

GRUBER and WHITEAKER, JJ., agree.

*Jason Owens Law Firm, P.A.*, by: *Jason E. Owens*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.